FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 MAR 14 A 10: 19

CLERK'S OFFICE
AT GREENBELT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

|  |  |  |
|---|---|---|
| KOEBEL PRICE, | * | |
| Plaintiff, | * | Case No.: GJH-16-2037 |
| v. | * | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, *et al.* | * | |
| Defendants. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiff Koebel Price brings this action against insurance plan administrator UNUM Life

Insurance Company of America ("Unum") and his former employer, The National Democratic

Institute ("NDI," collectively, "Defendants"), under the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking review of Unum's denial of Plaintiff's

claim for long term disability benefits. ECF No. 1. Now pending before the Court is Defendants'

Motion for Summary Judgment, ECF No. 23, and Plaintiff's Cross Motion for Summary

Judgment, ECF No. 25. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following

reasons, Defendants' Motion for Summary Judgment is granted, and Plaintiff's Cross Motion for

Summary Judgment is denied.

1

# I.   BACKGROUND[1]

## A.   Employment and Medical History

On February 27, 2015, Price submitted a claim to Unum for short and long term disability benefits, alleging that he became totally disabled as of February 3, 2015 due to the following conditions: MAST Cell Activation Disorder, Sjögren's syndrome, and Dysautonomia. *See* LTD 146–47. At the time of submitting his claim, Price was a 55-year old Senior Advisor for NDI. *Id.* As an NDI employee, Price was covered under NDI's Group Insurance Policy (the "Plan") issued by Unum. *See* LTD 99–142. The Plan is regulated under ERISA, which authorizes individuals to bring an action in federal court for wrongful denial of insurance benefits. 29 U.S.C. § 1132(a)(1)(B).

Starting in 2012, Price exhibited a litany of medical ailments as documented by various medical providers, including rheumatologists, internists, a sleep specialist, neurologists, immunologists, an allergist and multi-disciplinary treatment teams at the Mayo Clinic.[2] Due to these ailments, Price was approved for leave under the Family and Medical Leave Act ("FMLA") for intermittent periods of time between March 22, 2012 through May 31, 2015. LTD 520–22; 1757–60; 321–22; 312–13. Price contends that his conditions cause physical pain and mental impairments that preclude him from working, which include, but are not limited to, the following diagnoses and symptoms: Sjögren's syndrome, arthropathy, fatigue, cognitive impairment, mental fog, herniated disc, insomnia, migraines, small fiber neuropathy, myalgia, muscle aches, and tinnitus.

Under the Plan, a claimant is "disabled" if Unum determines that an employee is:

---

[1] The Court relies on facts taken from the administrative record, which was filed under seal on April 13, 2017. ECF No. 22. The administrative record contains Bates Numbers in the form of "UA-CL-LTD-XXXXX." The Court will reference the administrative record as "LTD XXXXX" herein.

[2] A comprehensive review of Price's medical conditions and history of treatment is set forth in Plaintiff's Cross Motion for Summary Judgment and briefly summarized herein. See ECF No. 25 at 6–9.

[L]imited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury. After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

LTD 113. Material and substantial duties includes those that "are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified." LTD 128–29. Moreover, the Plan defines "regular occupation" as "the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." LTD 130. Under the Plan, a claimant must be continuously disabled for a period of 112 days (the "elimination period") before Unum will make any long term disability payments. LTD 113.

### B. Claim Review Process

After Price submitted his claim for short and long term disability benefits on February 27, 2015, Unum attempted to collect Price's medical records prior to evaluating his claim. *See, e.g.,* LTD 155 (email from Unum to NDI noting that "we are waiting on medical records to approve Mr. Price's disability claim"). On May 11, 2015, Unum Lead Disability Benefits Specialist L. Hyde conducted a telephone interview with Price to review his medical conditions, treatment, occupation, finances, education, and the status of Price's claim. LTD 229–33.

On May 21, 2015, Unum formally initiated review of Price's claim as one for long term disability benefits. LTD 264.[3] Unum informed Price that it was in the process of obtaining

---

[3] The record suggests that Price's initial claim was accepted by Unum as a claim for short term disability benefits, which was approved through May 22, 2015. However, the parties fail to explain how Unum's initial review of Price's claim for short term disability benefits affected its review of Price's long term disability claim and associated ERISA procedural time limits. Therefore, the Court will only consider the actions taken by the parties as related to Price's claim for long term disability benefits once formally initiated on May 21, 2015.

information regarding Price's prior leave approved under the FMLA, position description, and medical records as a part of evaluating his claim and committed to provide an updated status on June 5, 2015. LTD 265–66. On June 5, Unum informed Price that it was extending the time in which it would make a determination on his long term disability claim and indicated that it expected to make a decision on his claim within 30 days of receiving a response to its information request, warning that it may make an eligibility determination within 45 days of the date of the request if the information was not provided. LTD 292. On June 19, after receiving some of the requested information, Unum again informed Price that it required additional information to evaluate his eligibility for benefits, LTD 370, and continued to request information from his medical providers. *See, e.g.,* LTD 395–96. On July 2, Unum again updated Price on the status of his claim, noting that Unum was still in the process of requesting his medical records. LTD 448–450. On July 14, Price contacted Unum to discuss the timeline for adjudicating his claim and informed Unum that it needed to make a decision within 60 days. LTD 2059. In response, Unum provided Price with a review of the additional information it needed to collect in order to make a decision. *Id.* Finally, on August 17, 2015, following the elimination period, Unum advised Price that it was commencing the payment of his long term disability benefits "under reservation of rights while we continue to evaluate your claim to determine if the information in your claim file supports disability under the provisions of the policy" and whether Price had met all eligibility requirements to maintain coverage under the Plan. LTD 994–97.

### C. Initial Claim Determination

On October 15, 2015, Unum ultimately denied Price's claim for long term disability benefits, finding that despite the pain complaints made by Price, the evidence before it did not

support that he was limited from performing the material and substantial duties of his regular occupation. LTD 1104–10. Unum's determination was based on a review of Price's available medical records and a number of expert reviews as detailed below.

### 1. Clinical Review

On August 3, 2015, C. Ramano, a registered nurse, conducted a clinical review of Price's claim file. LTD 739–44. Ramano summarized "all written and telephonic communications with the [Price], [Price's] employer and treating providers," which included information from thirteen treating providers between 2012-2015. *Id.* Of note, Ramano reproduced the reports of two of Price's doctors, Drs. Macedo and Moss, suggestive of Price's inability to work. In February and March of 2015, Macedo, a neurologist, documented Price's conditions of "arthralgias, myalgia, fatigue, cognitive impairment, migraine and autonomic dysfunction" and certified impairments for Price based on MAST Cell Activation Disorder, Sjögren's syndrome, and Dysautonomia. LTD 742. Macedo stated that Price was unable to work as a result of these impairments, which he opined was a result of Price's travel for employment. *Id.; see also* LTD 1638–51 (Macedo medical records).

In July of 2015, Moss, a clinical psychologist, reported diagnoses of dysthymic disorder and adjustment disorder with anxiety; however, Moss did not advise Price to stop working. LTD 742. Moss indicated that Price had mild impairment in social functioning, moderate impairment in memory and concentration, and no impairment in independent functioning. *Id.; see also* LTD 1965–67 (Moss medical records). Ramano reported Moss' treatment notes as follows:

> Dr. Moss seen for depression/anxiety, emotional condition deteriorating from a number of factors. To be terminated end of Feb, has considered disability but pushed to work since he knew his family's life style would be greatly compromised with less income. Is now apply for disability but does not know if that will be successful, will begin looking for employment.

5

LTD 742.

Finally, Ramano indicated that there were inconsistencies in the findings from Price's medical providers, including but not limited to the findings noted from Macedo and Moss above, and that because of "the multitude of symptoms reported that are not explained by medical information," Price's claim file should be provided to on-site physicians ("OSPs") for further review. LTD 744.

### 2. Occupational Identification

On August 10, 2015, R. Peavy, Unum's Senior Vocational Rehabilitation Consultant, conducted an Occupational Identification to determine the material and substantial duties of Price's occupation in the national economy, as well as its physical and cognitive demands. LTD 768–71. At the time of his termination, Price's primary responsibilities as a Senior Advisor for NDI included, but were not limited to, the following categories of activity:

- Provide strategies, tools and techniques to NDI's global staff members that can be used to support and strengthen citizen organizing and activism in new and emerging democracies;

- Uncover and document programmatic lessons and best practices;

- Deliver training and technical assistance to civic partners;

- Conduct in-country assessments of programs;

- Synthesize and draft conclusions, including programming recommendations;

- Enhance the Institute's network of practitioners that would be able to act as project consultants;

- Liaise with international and domestic organizations to identify new approaches;

- Represent NDI at appropriate professional conferences and donor meetings, as well as visiting with delegations;

- Identify funding opportunities for new programs;

- Work as team player on the citizen participation team, providing back-up to other team members and supervising work by junior team members and interns.

LTD 299–300.

Upon review of both Price's official job description and responsibilities as described by Price himself, Peavy determined that Price's occupation in the national economy was most consistent with a "Program Specialist," as defined by the Enhanced Directory of Occupational Titles ("eDOT" # 030.167-031). The job of Program Specialist typically requires a four-year degree and subjects an employee to physical, cognitive, and mental stress demand requirements of "[e]xerting up to 10 pounds of force occasionally mostly seated activity and brief periods of standing and walking." LTD 770. Unum recognized that the job of Program Specialist requires at least occasional travel, making judgments and decisions, dealing with people, adaptation to change, independent planning, and memory and concentration.[4] *Id.*

---

[4] Peavy listed the material and substantial duties of a Program Specialist as follows:
> Develops and manages assigned client relationships in a manner consistent with policies and procedures;
> Schedules and facilitates program support meetings;
> Ensures timely completion and distribution of required documentation;
> Monitors the implementation of all contractual obligations to ensure compliance with applicable agencies;
> Prepares and assists in review of monthly status reports, test plans, design data books, and process and material specifications as required;
> Plans and coordinates meetings on project timing, goals, and budget to ensure fulfillment of internal customer expectations and compliance with policies and contractual requirements;
> Provides key financial data to Program Manager on a timely basis;
> Creates, maintains, and updates assigned program schedules for contract deliverables and key events;
> Assists in the creation of presentations outlining the program's strategies, products, and results associated with internal goals;
> Communicates findings and recommendations on critical initiatives to clients and internal parties;
> Assists in managing or leading special projects associated with the program and assigned clients;
> Builds and maintains an accurate client database;
> Communicates with clients and management to resolve program issues;
> Serves as the direct point of contact for clients;

### 3. Medical Reviews

Following the clinical and occupational reviews, five different physicians reviewed Price's claim file. On August 6, 2015, Dr. S. Kirsch reviewed Price's claim file as described in Ramano's Clinical Review and recommended that Moss' medical records and Price's prescription medications be reviewed prior to sending Price's claim for further evaluation. LTD 758. On September 18, 2015, Dr. N. Kletti, Unum's OSP psychiatrist, reviewed Price's claim file and determined that it did not support a finding that Price was disabled under the Plan. LTD 1058–68. Kletti concluded that he did "not find file documentation to support psychiatric impairment precluding ability to perform usual occupational duties at any time during this claim." *Id.* at 1067–68. Kletti also raised concerns with Moss' findings, noting that Moss was the only attending physician that had certified an impairment on the basis of a psychiatric illness, and he was unsuccessful in his attempts to contact Moss for further consultation. *Id.* at 1067; *see also* LTD 1028–31 (August 27, 2015 letter from Kletti to Moss). Finally, Kletti recommended an additional medical review as "there remains unresolved AP [attending physician ]/OSP disagreement following AP contact attempts, and Psychiatry OSP finds that AP's opinion is not well supported by data." LTD 1068.

On September 24, 2015, Dr. R. Maguire, another Unum OSP certified in preventative and occupational medicine, reviewed Price's claim file and determined that Price did not have medical conditions preventing him from performing the physical demands of his occupation. LTD 1078–86. Maguire stated that Price "does not have Mast Cell Activation Disorder given his negative bone marrow biopsy and genetic testing . . . . He does not have Sjögren's Syndrome as

---

Supervises, manages, and provides operational guidance to direct staff, including providing necessary skills training.
LTD 769–70.

documented by the negative lip biopsy and negative diagnostic testing." LTD 1084.[5] Moreover, Maguire determined that "the severity, existence, duration and frequency of symptoms that would prevent him from working were not consistent with clinical exams, diagnostic findings, and his reported activity level" and noted that Price had worked for approximately four years with his reported symptoms. LTD 1085–86.

Unum then provided Price's claim file to two additional Designated Medical Officers to review Kletti's psychiatric conclusions and Maguire's physical conclusions. On September 24, 2015, Dr. S. Shipko, a board-certified psychiatrist, reviewed Price's claim file, and agreed with Kletti's opinion that the claim file did not support a finding that Price was disabled due to psychiatric restrictions and limitations. LTD 1088–90. Specifically, Shipko noted that office visit notes from Macedo and Moss "reflect a mild, stable psychiatric illness which is unchanged from when the clamant was still working full time." LTD 1090. Finally, on October 6, 2015, Dr. J. Bress, a board-certified internist, conducted a review of Price's claim file. Similar to the other medical reviews, Bress noted that extensive testing had failed to reveal a cause for Price's symptoms and concluded that there was no evidence showing that Price could not perform full-time sedentary work. LTD 1094–97.

### D. Appeal of Initial Claim Determination

#### 1. Price's Appeal

On April 12, 2016, Price submitted an appeal to Unum regarding its denial of disability benefits and attached approximately 8,000 pages of supporting documentation. LTD 1309–454. The appeal letter and attachments included medical evidence supporting Price's disability claim as set forth in his claim file, additional medical evidence not previously considered, voluminous

---

[5] On September 18, 2015, Maguire unsuccessfully attempted to obtain additional information from Macedo regarding Macedo's findings related to diagnoses of Mast Cell Activation Disorder and Sjögren's syndrome. *See* LTD 1070–71.

medical literature associated with his claimed conditions, personal statements regarding his inability to work, and arguments that Unum's claim review process is inherently biased and unfair, resulting in a predetermined outcome of denial. *Id.* Price's additional medical evidence included a neurorehabilitation evaluation by Dr. R. Parente, a licensed psychologist, LTD 9665–86, and a functional capacities evaluation ("FCE") by C. Martinez, a physical therapist, LTD 3035–47.

Parente's evaluation was based on a series of examinations conducted on February 17, 2016, including attention, concentration, and memory tests. Parente noted that Price was able to communicate well, ambulate without assistance, and displayed high intellectual functioning but noticed problems with his memory and executive functioning, including difficulty organizing. LTD 9671–72. Parente summarized his conclusions as follows: "My impression of Mr. Price was that his medical condition has caused problems with his memory and his executive skills, consistent with his self-report. Moreover, it is unclear whether or not these problems will worsen as his condition deteriorates. He, therefore, does not seem capable of returning to his former job, which would require high-level executive and memory skills." LTD 9672.

Martinez assessed Price's performance during physical and mental exercises conducted on February 15, 2016, which were similar to that which Price must endure at work and provided the following conclusion: "The findings indicate he is unable to sustain the tested capabilities on the attached Functional Abilities Summary Chart over an 8 hour day as he cannot sustain this level of effort for more than a short period of time, which reduces his workplace activity ability to part time levels but would still be subjected to interruption." LTD 3035.

## 2. Unum's Appeal Decision

Upon review of Price's appeal, Unum upheld its initial decision and reaffirmed its finding that Price "was able to perform the duties of his occupation and did not meet the definition of disability requirements within" the Plan. LTD 9983–96. Following receipt of Price's appeal, M. Snyder, a registered nurse, performed a second Clinical Review of Price's file on May 2, 2016 in preparation for further Medical Reviews by Unum physicians. LTD 9918–29. Snyder provided a summary of the appeal materials, including a review of medical records considered during Price's initial claim and additional medical information provided by Parente and Martinez. Similar to the medical reviews performed during Unum's initial claim review, Snyder noted a number of inconsistencies from Price's medical reports, including areas where Price's symptoms and diagnoses were not substantiated by actual test results, necessitating further medical review.

On May 17, 2016, psychiatrist Dr. P. Brown reviewed Price's records and addressed the conclusions set forth in Parente's report. Brown concluded that the behavioral health information set forth in the claim file did not support a diagnosis of a cognitive disorder. LTD 9953–58. Brown questioned the validity of Parente's conclusions, pointing to the absence of raw data, evidence of adequate cognitive functioning, and Parente's failure to distinguish between possible causes of any related impairments. LTD 9957. Brown recommended that Unum request Parente's raw data and conduct further neuropsychology reviews upon receipt. LTD 9957.[6]

On May 19, 2016, family and occupational medical specialist Dr. S. Norris reviewed Price's records and summarized that while Price's symptoms were reported since 2012, diagnostic testing performed through several specialty evaluations did not identify any

---

[6] Unum was unable to obtain Parente's raw data. On May 2, 2016, Unum requested Parente's "evaluation report, treatment notes and raw data including scoring sheets, data summaries, test responses, computerized interpretive summaries and any other clinical documents produced during the neuropsychological testing." LTD 9913–14. On May 8, 2016, Price's counsel refused to provide the information, stating that the request for information "is a clear violation of the psychologic ethics as your request for information is clearly improper." LTD 9960.

converging diagnoses consistent with those symptoms. LTD 9962–67. Norris further noted that "variable nonspecific findings were noted on some diagnostic tests; however, other testing was normal." LTD 9963. Though not dispositive to his conclusions, Norris also noted that Price's imminent termination from NDI "appears to be a primary contributing factor (per Dr. Moss) that correlated with [Price's] 'decision' to pursue disability." *Id.* Thereafter, Norris set forth a review of Price's claim file provided in the initial determination, explaining how the individual medical reports and tests failed to substantiate a disability determination. LTD 9964–66. Regarding the FCE completed on February 15, 2016, Norris found that Martinez's conclusions that Price could not return to his previous position were unpersuasive because the evaluation occurred over a year after Price's date of disability, were based on Price's description of his job as that consistent with a "heavy physical demand category" requiring him to lift upwards of 70 pounds, and were inconsistent with findings from prior physical examinations. LTD 9966.

In addition to its Medical Reviews, Unum reassessed its earlier vocational determination of Price's occupation as a Program Specialist. In his appeal, Price provided general reference material related to vocational assessments and supplemented his claim file with information suggesting that Price's role as a Senior Advisor with NDI required additional mental and physical demands, including the need for Price to undergo strenuous conditions during international travel. *See* LTD 1406–09. On August 28, 2016, S. O'Kelly, Unum's Senior Vocational Rehabilitation Consultant, conducted another vocational review and determined that Price's additional information did not alter Unum's initial designation of Price's occupation as that of a Program Specialist. LTD 9907–11. Specifically, O'Kelly determined that the general reference material on vocational assessments was not specifically relevant to Price's individual case and, notwithstanding the additional mental and physical demands associated with Price's

role as a Senior Advisor with NDI, the primary purpose of his occupation aligns with that of a Program Specialist as determined through Unum's initial vocational determination. LTD 9911 (noting that "Programs can include a wide range of political and social goals for which the majority would not require international travel or lifting beyond the Sedentary range of capacity.").

On May 27, 2016, having completed review of the information made available to it, Unum informed Price's counsel that it needed a 45-day extension to complete review of Price's appeal because it was "in need of the outstanding raw test data requested from Dr. Parente." LTD 9971. Unum indicated that the 45-day extension would begin when it received the data or, if not received by June 3, 2016, the review would continue without such data. *Id.* Having not received the information by June 3, 2016, Unum informed Price that it would make a decision by July 18, 2016, 45 days later. LTD 9974. Nonetheless, Plaintiff filed suit on June 13, 2016, two days prior to receiving Unum's decision on his appeal. *See* ECF No. 1; LTD 100015. Thereafter, on June 15, 2016, Unum advised Price that it had completed its appellate review and upheld its initial denial of benefits. LTD 9984.[7]

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment under Rule 56

A party may move for summary judgment under Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . together with the affidavits, if any, which it believes demonstrate

---

[7] After filing his Complaint and receiving Unum's appeal decision, Price provided Unum with a supplemental response on July 28, 2016 to dispute Brown's assessment of Parente's conclusions. ECF No. 25-2.

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 466 U.S. 317, 323 (1986) (internal citation omitted). In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). To withstand a motion for summary judgment, the nonmoving party must do more than present a mere scintilla of evidence. *Phillips v. CSX Transport, Inc.*, 190 F.3d 285, 287 (4th Cir. 1999). Rather, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Although the Court should draw all justifiable inferences in the nonmoving party's favor, the nonmoving party cannot create a genuine issue of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Cross-motions for summary judgment require that the Court consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). "The Court must deny both motions if it finds there is a genuine issue of material fact, but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Wallace v. Paulos*, No. DKC 2008-0251, 2009 U.S. Dist. LEXIS 89700, at *13, 2009 WL 3216622 (D. Md. Sept. 29, 2009) (internal citation omitted).

## B. Review of ERISA Benefits Eligibility Determination

As an initial matter, the Court must determine whether to review Unum's denial of disability benefits *de novo* or for an abuse of discretion. The denial of benefits under an ERISA plan must "be reviewed under a *de novo* standard of review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

14

construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989); *see also Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). When the plan

vests the administrator with discretionary authority to make eligibility determinations, the Court

reviews the administrator's decision for abuse of discretion. *See Williams v. Metropolitan Life*

*Ins. Co.*, 609 F.3d 622, 629–30. The Plan provides that Unum "has the discretionary authority"

to make benefit determinations, including the eligibility for benefits. LTD 103, 137.[8]

Because Unum makes benefit determinations and also pays those benefits to eligible

claimants, Unum operates under a conflict of interest. *See Glenn*, 554 U.S. at 108. But such

conflicts of interest are a common feature of ERISA plans and do not automatically prohibit the

Court from reviewing Unum's denial of benefits under the abuse of discretion standard. *Id.* at

120–21 (J. Roberts concurring). Instead, Unum's conflict of interest is "one factor among many"

for the Court to evaluate under the abuse of discretion standard. *Id.* at 116. *See also Champion v.*

*Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008) (clarifying that conflict of interest

does not modify the standard of review; rather it is one of many factors in determining the

reasonableness of the Plan's discretionary determination).

However, the Court will not undertake a deferential review of Unum's decision if Unum

commits substantial violations of ERISA deadlines. *See Gilbertson v. Allied Signal, Inc.*, 328

F.3d 631 (10th Cir. 2003). ERISA regulations require that an adverse determination on a

disability claim be made within 45 days following receipt of the claim. 29 C.F.R. § 2560.530-

1(f)(3) (2001). The 45-day deadline may be twice extend up to 30 days upon showing that an

---

[8] The plan provides the following explanation under "Discretionary Acts":
> The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. . . . Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

LTD 137.

extension was necessary due to matters beyond the control of the plan administrator. § 2560.530-1(f)(3). A plan administrator must also complete review of an appeal request within 45 days, which may be extended for one additional 45 day period for "special circumstances." § 2560.530-1(i)(1)(i). Price argues that Unum requested extensions in its reviews of Price's initial claim and administrative appeal for impermissible reasons, alleging that Unum failed to act promptly in collecting Price's medical records and requested the raw data from Parente's psychological tests in contravention of established ethical requirements. ECF No. 25 at 33.[9]

However, the record indicates that upon receiving Price's short and long term disability claims, Unum persistently contacted Price, NDI, and Price's medical providers to obtain his lengthy collection of medical records during its extended review period. *See, e.g.,* LTD 153, 157, 176. As these extensions were warranted and did not violate any clearly established ethical requirements, and Price fails to show that Unum otherwise violated any ERISA deadlines, the Court has no basis to supplant Unum's discretionary authority.[10] *See Arnold ex rel. Hill v. Hartford Life Ins. Co.*, 527 F. Supp. 2d 495, 503 (W.D. Va. 2007) (citing *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026 (8th Cir. 2000) ("a court 'may infer that the trustee did not exercise judgment when rendering [its] decision' in only a limited number of circumstances, including 'where procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process'")).

---

[9] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[10] Price contends that Unum's request for raw data was unethical because Unum failed to designate the reviewing neuropsychologist that would receive the data. ECF No. 25 at 5. However, Unum's request for raw data sent directly to Parente provided assurances that the data would be handled by Dr. W. Black in accordance with "ethical and legal standards for psychological material as established by the APA," LTD 9914, and the Court does not find this to be in any way unethical. Regardless, Price failed to explain Unum's purported ethical violation when responding to Unum's data request, and correspondence between Unum and Price's counsel makes clear that Price had no interest in working with Unum to provide this data in a format that appeased his ethical concerns. *See* LTD 9960 (letter from S. Elkind, Counsel to Plaintiff, to C. Grant, Unum Lead Appeals Specialist, stating that Unum's request for additional information from Parente was "clearly improper" without substantiating why and characterizing Unum's action as "a continuing course of unfair claims handling and [suggesting Unum] may as well proceed with completing your review with the information provided as you have no intention of conducting yourself properly").

Regardless, even if Unum did not strictly comply with the time limits set forth in 29

C.F.R. § 2560.530-1, such procedural violations do not automatically strip Unum of its

discretionary authority to make claim determinations. Rather, the violations enable a claimant to

"be deemed to have exhausted the administrative remedies available under the plan" and bring

suit in federal court. § 2560.503-1(l). The following discussion by Judge Kelly in *Hardt v.

Reliance Standard Life Ins. Co.*, 494 F. Supp. 2d 391, 393–94 (E.D. Va. 2007) provides a

comprehensive analysis of when a plan administrator, like Unum, may lose its discretionary

authority under § 2560.503-1(l):

> The original Department of Labor regulations implementing ERISA provided that a claim
> or appeal was "deemed denied" if it was not decided within the specified time period.
> *E.g.*, 29 C.F.R. § 2560.503-1(h)(4) (1998). The United States Supreme Court ruled that
> this "deemed denied" regulation merely permitted a claimant to commence a civil action
> without first exhausting his or her administrative remedies. *Mass. Mut. Life Ins. Co. v.
> Russell*, 473 U.S. 134, 144 (1985). Some lower courts went a step further, however, and
> held that if a claim is deemed denied by operation of law, the Claims Reviewer has made
> no discretionary decision to which deference is owed. *Jebian v. Hewlett-Packard Co.
> Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1103 (9th Cir.
> 2003); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632-33 (10th Cir. 2003). Other
> courts continued to defer to the Claims Reviewer whenever there was a grant of
> discretion in the Plan, regardless of whether the claim was "deemed denied." *See, e.g., S.
> Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir.1993) ("In our view, the
> standard of review is no different whether the claim is actually denied or is deemed
> denied."); *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988).
>
> The Department of Labor issued amended ERISA regulations in 2000 that apply to
> claims filed on or after January 1, 2002. *Jebian*, 349 F.3d at 1103 n. 5. The amended
> regulations still require that the Claims Reviewer render a decision on a disability
> benefits appeal within a specified time frame. 29 C.F.R. § 2560.503-1(f)(3) (2007)
> (providing a 45-day time period and the option of a 30-day extension for disability
> claims). However, a claim is no longer deemed denied after the expiration of the
> regulatory deadline. Instead, a claimant's administrative remedies are now deemed
> exhausted once the deadline for decision has passed, so the claimant may then file a civil
> action. 29 C.F.R. § 2560.503-1(l).
>
> The question thus presented is whether the amended regulations require courts to review
> claim determinations made after the regulatory deadline *de novo* or for an abuse of
> discretion. There is no Fourth Circuit precedent on point, and the court has found scant
> discussion in other jurisdictions. *See Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235-

36 (1st Cir. 2006) (recognizing the question, but resolving the case on other grounds); *Meyers v. GE Group Life Assurance Co.*, Civ. Action No. 04-5488, 2006 WL 680993, at \*9–10 (D.N.J. Mar. 10, 2006) (refusing to apply *de novo* review regardless of the expiration of the regulatory deadlines). Having reviewed the available authorities, the Court concludes that the modified abuse of discretion standard of review is appropriate for this case.[11]

Plaintiff Hardt did not file the instant action until after Reliance had rendered its final, albeit untimely, decision. During the pendency of her appeal, the parties dickered going back and forth regarding the FCEs, and this squabbling delayed a decision on the appeal. Who is to blame for the resulting delay is irrelevant. What matters is that Reliance was taking action on Ms. Hardt's appeal. The parties were in contact. Reliance was taking steps commensurate with the exercise of its discretion as delineated in the Plan, and Reliance eventually exercised its discretion when it denied Ms. Hardt's appeal. The Court is obligated to give that discretion deference. This holding follows a line of cases which hold that "substantial compliance" with the ERISA framework is sufficient to result in review for abuse of discretion. *Gilbertson*, 328 F.3d at 634-35; *see also Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir.2005).[12]

Unlike *Hardt*, Price filed his Complaint within Unum's 45-day extension period, but two days *before* Unum issued its appeal determination. *See id.* ("Had Ms. Hardt filed this action after the 45-day period but before Reliance rendered its decision, the Court would then have to decide whether a deferential standard of review remains appropriate"). Nonetheless, Unum substantially complied with ERISA's procedural requirements. While the parties disagreed on Unum's ability to request raw data from Parente, Unum was taking steps commensurate with its exercise of discretion as delineated in the Plan and has provided a reasoned decision for the Court to review. *See Ellis v. Met. Life Ins. Co.*, 126 F.3d 228, 235 (4th Cir. 1997) (substantial compliance exists

---

[11] Following *Hardt*, the Fourth Circuit no longer applies the modified abuse of discretion standard in conflict of interest cases in favor of the normal abuse of discretion standard. *See Thomas v. United of Omaha Life Ins. Co.*, 536 F. App'x 247, 351 (4th Cir. 2013) (citing *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353 (4th Cir. 2008)).

[12] Subsequent to Plaintiff filing suit, the Department of Labor updated the ERISA regulations in 2017 to remove a Plan's discretionary authority following procedural violations as follows:

> In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan . . . . If a claimant chooses to pursue [judicial relief] *the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary.*

§ 2560.503-1(l)(2)(1) (2017) (emphasis added); *see also* 81 Fed. Reg. 92341 (Dec. 19, 2016). However, this provision is not relevant to the instant action because 1) it is only applicable to claims for disability benefits filed on or after January 1, 2018, § 2560.503-1(p)(3) (2017), and 2) the Department of Labor has delayed implementation of the updated rule through April 1, 2018 pending further review pursuant to Executive Order 13777. *See* 82 Fed. Reg. 56560 (Nov. 29, 2017).

18

where the claimant is provided with "a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review") (internal quotation marks and citations omitted)) *abrogated on other grounds by Champion*, 550 F.3d 353. *Cf. Gritzer v. CBS, Inc.*, 275 F.3d 291, 295 (3rd Cir. 2001) (declining to defer to plan administrator's discretionary determination when administrator "apparently never made any effort to analyze appellants' claims much less to advise them of what that analysis disclosed until after [the] litigation was filed."). Moreover, Unum made its ultimate decision without data that Price himself maintained Unum could not have, and any delays associated with Unum's attempt to obtain this information does not show that it failed to substantially comply with ERISA's procedural requirements or prejudiced Price in any way. *See Arnold ex rel. Hill v. Hartford Life Ins. Co.*, 527 F. Supp. 2d 495, 503 (W.D. Va. 2007) ("When considering whether an ERISA fiduciary has substantially complied with the regulations, the most important factor to consider is whether the record in a particular case creates a concern regarding the overall adequacy and integrity of the fiduciary's decision making process."). Therefore, the Court will review Unum's disability determinations for an abuse of discretion.[13]

## III.    DISCUSSION

In reviewing Price's initial claim for disability benefits and subsequent appeal, Unum maintains that it denied Price's claim because, despite his complaints of pain, the medical evidence before it did not support that he was limited from performing the material and substantial duties of his regular occupation. *See* ECF No. 23-1 at 31; LTD 1104. The Court must

---

[13] Separate from these alleged procedural violations, Price, in his Complaint, alleges that Unum failed to produce Price's claim file documentation upon request as required by 29 C.F.R. § 2560.502- 1(g). ECF No. 1 ¶ 22. However, the administrative record shows that Price requested this documentation on January 16, 2016, and Unum provided the documentation on January 21 and 22, 2016. LTD 1148; 1150–51. This documentation was then reproduced and referenced by Price's counsel in his April 12, 2016 appeal letter. LTD 1309 n. 2 ("The original claim file received from the insurer has been provided for inspection to memorialize the exact contents sent to counsel in response to the proper ERISA document request"). Price has not advanced this claim during the briefing herein, and the Court has no basis to find that Unum violated any ERISA procedural requirements related to production of documents.

determine whether, under the requirements of the Plan and ERISA itself, Unum's decision was reasonable or an abuse of discretion. *See Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008) (the abuse of discretion standard "equates to reasonableness"); *see also id.* at 325–36 ("Where an ERISA administrator rejects a claim to benefits on the strength of substantial evidence, careful and coherent reasoning, faithful adherence to the letter of ERISA and the language in the plan, and a fair and searching process, there can be no abuse of discretion."). The Fourth Circuit has set forth eight nonexclusive factors that courts should consider in reviewing the reasonableness of a plan administrator's decision: 1) the language of the plan; 2) the purpose and goals of the plan; 3) the adequacy of the materials considered to make the decision and the degree to which they support it; 4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; 5) whether the decision-making process was reasoned and principled; 6) whether the decision was consistent with the procedural and substantive requirements of ERISA; 7) any external standard relevant to the exercise of discretion; 8) and the fiduciary's motives and any conflicts of interest it may have. *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010) (citing *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000)).[14]

In reviewing the reasonableness of Unum's decision, the Court will only consider the evidence placed before Unum when making the decision. *See Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788–89 (4th Cir. 1995) (citing *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994) ("when a district court reviews a plan administrator's decision

---

[14] The Court will not specifically address each individual factor as the parties have not offered arguments for each factor and, more importantly, the Fourth Circuit does not require such an approach. *See, e.g., Everette v. Liberty Life Assurance Company of Boston*, No. TDC-16-1248, 2017 WL 2829673 (D. Md. June 29, 2017) (reviewing administrator's decisions for abuse of discretion without explicit discussion of each individual factor).

under a deferential standard, the district court is limited to the evidence that was before the plan administrator at the time of the decision")). Moreover, in making a claim for disability benefits under the Plan, Price maintained the burden to submit the requisite proof to Unum. *See, e.g., Gallagher v. Reliance Std. Life Ins. Co.*, 305 F.3d 264, 270 (4th Cir. 2002) (stating that an ERISA plan participant bears the burden of proof that he qualifies for long term disability benefits). Considering the appropriate factors, the Court finds that Unum's denial of disability benefits was reasonable, and Price's arguments regarding Unum's abuse of discretion are addressed in turn.

### A. Adequacy of Medical Reviews and Appeal Determination

Unum did not conduct a physical examination of Price; rather, Unum relied on internal and contract physicians to perform "paper reviews" of Price's medical records and determine whether Price was disabled as defined by the Plan. Price argues that Unum's failure to physically examine him, and reliance on biased physicians, was an abuse of discretion.

Neither ERISA nor the Plan requires Unum to conduct a physical examination. *See Piepenhagen v. Old Dominion Freight Line, Inc*, 395 F. App'x. 950, 957 (4th Cir. 2010) (rejecting argument that plan administrator had duty to conduct independent medical examination before denying benefits because claimant, not plan administrator, has duty to provide evidence of disability); *see also* LTD 113 (Plan provision stating that Unum "*may* require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice") (emphasis added). Rather, ERISA allows plan administrators to rely on paper reviews of medical records by consulting physicians so long as the information before the physicians supports their determination. *See Sheppard & Enoch Pratt Hosp.*, 32 F.3d at 125

(finding no abuse of discretion where plan administrator relied on paper reviews of consulting physicians).

Price further argues that Unum's reliance on paper reviews by psychiatrists, in lieu of an actual examination, violated "psychological ethical codes" because such codes require an in-person evaluation prior to issuing any opinion or diagnosis. *See* ECF No. 25 at 19. However, the Court is unaware of any legal requirement necessitating an in-person psychiatric evaluation. *See Savoy v. Fed. Express Corp. Long Term Disability Plan*, No. DKC-09-1254, 2010 U.S. Dist. LEXIS 77262, at *3–4 (D. Md. July 30, 2010) (upholding insurer's reliance on a psychologist's peer review of claimant's file). Moreover, Price misstates the American Psychological Association ethics requirements reproduced in the administrative record, which allow a physician to forego an in-person examination when reviewing a patient's records. *See* LTD 7386 ¶ 9.01(c) ("When psychologists conduct a record review or provide consultation or supervision and an individual examination is not warranted or necessary for the opinion, psychologists explain this and the sources of information on which they based their conclusions and recommendation.").

Regarding the adequacy of the paper reviews, Price goes to great lengths to undercut the credibility and impartiality of each of Unum's consulting physicians. Price provides examples of other courts declining to follow the physicians' conclusions, reproduces unfavorable reviews of the physicians' reputations in private practice, and attacks their credibility based on their work history and age.[15] Price fails to provide any conclusive evidence that the reviewing physicians were patently unable to assess Price's purported disability, and the Court need not render

---

[15] Price devotes a considerable portion of his Cross Motion for Summary Judgement to such arguments, which are not repeated herein. *See* ECF No. 25 at 19–25. Price's arguments that the reviewing physicians are incapable of making an unbiased decision are unpersuasive, and many of Price's citations exaggerate the degree to which courts have discounted the conclusions of these physicians. *See, e.g.,* ECF No. 25 at 19 (citing *Doe v. Unum Life Ins. Co. of Am.*, 116 F. Supp. 3d 221 (S.D.N.Y. 2015) (Price stating that Kletti's findings were "given no credibility" when the reviewing court merely criticized Unum's process for obtaining follow-up information from claimant's physician, not the quality of Kletti's review or his credentials)).

judgment as to the overall qualifications of these physicians. Rather, the Court will consider the credibility of these physicians based on whether their conclusions are reasonable and supported by the medical records available to them.

Finally, Price argues that Unum failed to afford him with an opportunity to rebut the conclusions of Unum's medical and vocational reviews performed in support of Price's appeal prior to Unum rendering a decision. In submitting his appeal, Price advised Unum that "[s]hould you choose to have [Price's] submitted evidence reviewed by any medical and/or vocational professional, [Price] hereby reserves the right to respond to such professional's report prior to your making a final claims determination." LTD 1301. Because Unum did not abide by Price's request, Price accuses Unum of "sandbagging" him. ECF No. 28 at 15; ECF No. 25-2. As with many of Price's arguments, Price provides a lengthy discussion of ERISA case law without explaining its applicability to the instant litigation. *See* ECF No. 28 at 15–17 (providing ERISA case law regarding the need for a "meaningful dialogue" between the claimant and plan administrator without any associated discussion of Unum's alleged wrongdoing). While ERISA precludes an employer from adding a new reason for claim denial in its final administrative review, *see Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008), it does not entitle a claimant to the opportunity to continue to review and rebut medical opinions generated in support of this review. *See Midgett v. Washington Group Int'l Long Term Disability Plan*, 561 F.3d 887, 895 (8th Cir. 2009); *see also Giles v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 925 F. Supp. 2d 700, 717–18 (D. Md. 2002) (noting that circuits are no longer split as to whether ERISA requires an insurer to provide a claimant with medical opinion reports prior to issuance of a final decision). Unum's appeal decision did not proffer any new reasons for denying Price's claim; Unum merely reaffirmed its prior conclusions and explained

why Price's supplemental appeal materials were insufficient to support a disability determination. Contrary to Price's assertions, Unum provided Price with its questions regarding Price's disability throughout the claim review process, though Price himself elected not to provide Unum with a direct response while his claim was pending. Therefore, the Court finds that Unum's process for reviewing Price's claim was reasonable.[16]

## B. Consideration of Medical Evidence

Moving to the substance of the paper reviews, Price argues that Unum physicians undertook a "selective review" of the evidence and relied on "incomplete and biased" findings. ECF No. 25 at 39–41. Price cites ample law establishing that Unum may not refuse to consider the opinions of Price's treating physicians or emphasize records suggestive of an ability to work over others suggestive of a disabling condition. However, Price fails to supplement these statements of law with anything more than generalized assertions that Unum improperly weighed evidence discrediting Price's disability. *See id.* at 39. Contrary to Price's allegations, Unum set forth a comprehensive review of Price's medical history, inclusive of results that both support and discredit Price's disability. *See* LTD 738–744. Price's assertion that Unum failed to identify the purported inconsistencies in Price's medical file, *see* ECF No. 25 at 3, is simply wrong. While Unum has not detailed these inconsistencies in its summary judgment brief, these inconsistencies are set forth in considerable detail in Unum's denial of Price's initial claim and

---

[16] While Price did provide Unum with supplemental information related to Parente's conclusions, the information was provided after Unum issued its final determination and therefore not part of the administrative record under review herein. *See Bernstein*, 70 F.3d at 788. Nor will the Court consider this supplemental information for purposes of impeachment. While Price provides a lengthy discussion informing the Court that it may consider impeachment evidence beyond the administrative record, Price fails to explain how the supplemental information should be used to impeach anything. ECF No. 28 at 18–20. Similar to Price's appeal request, the Court finds the supplemental information unpersuasive. The 400-plus page supplement is wholly unconnected to the substantive conclusions reached by Unum, providing extensive general medical literature and repeating attacks on the credibility of Brown and Norris. The supplemental information only includes two pages that could provide insight into the reasonableness of Unum's decision—Parente's response purportedly provided on pages 7917 and 7918—but these pages were omitted from Price's filings herein. *See* ECF No. 25-2 and 25-3 (providing all of Prices' supplemental information attachments, except pages 7917 and 7918, as Exhibit B).

24

subsequent appeal. *See, e.g.,* LTD 1105–07 (initial claim denial letter noting that Price's records do not show that his psychiatric conditions worsened prior to him stopping work and that the intensity of treatment is inconsistent with a disabling condition); LTD 9988 (appeal decision noting that laboratory testing did not substantiate finding of Mast Cell Activation Disorder).[17]

Moreover, Unum's paper reviews highlighted a number of facts that appear to undercut the credibility of the ailments that, as Price contends, rendered him disabled. For example, Shipko noted that, notwithstanding Macedo's determination of Price having a cognitive mental impairment, all of Macedo's observation notes indicate "normal mental status examinations." LTD 1090. Brown concluded that the initial diagnosis of Sjögren's syndrome in 2012 "was presumably due to a single test showing a weakly positive SS-B" but that "[s]ubsequent antibody testing was negative, and lip bx (Mar 2015) was negative for changes characteristic of Sjögren's." LTD 9965. Unum also found that statements from Price's spouse that he is "confined to his bedroom in fatigue and pain" were inconsistent with Price's own reports of his activity levels and the findings from his physical exams. LTD 9929. Price is unable to point to any specific medical evidence that Unum failed to consider, or explain how Unum's reliance on the long list of inconsistencies in Price's medical files was unreasonable. Ultimately, Unum concluded that Price claimed to suffer from a number of ailments, but that those ailments were unsubstantiated by diagnostic testing, did not correspond to a disabling condition rendering him unable to work, and were present for a number of years prior to Price submitting his claim. Unum, thus, interpreted Price's medical records to suggest that Price's pending termination, not a

---

[17] Price references periods of intermittent leave approved under FMLA as evidence of other disability approvals without offering an explanation as to how such leave is indicative of a disabling condition under the Plan. *See* ECF No. 25 at 18. The Court is not persuaded that Price's FMLA approval suggests that he had a disabling condition under the Plan. *Cf. McCready v. Standard Ins. Co.,* 417 F. Supp. 2d 684, 702 (D. Md. 2006) (an award of social security benefits is not dispositive as to the propriety of an award under ERISA as the laws have differing definitions of a disabling condition).

worsening of these ailments, was a principal driver in his decision to pursue disability benefits. Because this determination is supported by the administrative record and Unum's associated paper reviews, the Court has no basis to upset it now.[18]

## C. Consideration of Conclusions from Treating Physicians

While Macedo and Parente each determined that Price suffered from certain impairments that prevented him from sustaining full time employment, Unum, without the use of an independent medical examination, declined to adopt such conclusions. Price argues that Unum's failure to adopt the opinions of his treating physicians in favor of its paper review is evidence that Unum abused its discretion. ECF No. 25 at 41. Plan administrators should generally place greater emphasis on the opinions of reviewing physicians that have actually examined the claimant, *see Torta v. Hartford Life and Accident Insurance Co.*, 162 F. Supp. 3d 520, 530 (D. S.C. 2016) (citing *Evans*, 514 F.3d at 320), and in-person examinations "can prove especially significant in cases in which the plan administrator is operating under a conflict of interest or rejects a treating doctor's opinion." *Laser v. Provident Life & Accident Ins. Co.*, 211 F. Supp. 2d 645, 650 (D. Md. 2002). However, a plan administrator is not required to rely on the opinions of a claimant's treating physicians and acts within its discretion when resolving conflicting reports regarding a claimant's health and work ability. *Id.* at 651; *see also Brodish v. Federal Express Corp.*, 384 F. Supp. 2d 827, 836 (D. Md. 2005) (no abuse of discretion where plan administrator denied claim based on peer review of medical records that differed from conclusions of claimant's treating physician).

---

[18] Price argues that Unum's reliance on his pending termination to justify denying his claim is an impermissible "post-hoc rationalization" that cannot be raised before the Court because it was never conveyed in Unum's claim denial. ECF No. 28 at 9. However, in Price's claim file, multiple medical reviewers recognized that, per Moss' exam notes, Price's pending termination was a factor in his decisions to pursue disability benefits. *See, e.g.,* LTD 1090, 9963.

The administrative record indicates that Unum identified information within Price's claim file that conflicted with the opinions of Macedo and Parente. For example, Unum's clinical reviews document instances where Macedo's findings of neuropathy and Mast Cell Activation Disorder were unsubstantiated by diagnostic test results and opinions from other treating physicians. LTD 9928 (referencing conclusions from allergist Rank and neurologist Birnbaum following testing performed at the Mayo Clinic and Johns Hopkins). Unum's medical review highlighted instances where Macedo's examination notes conflicted with his overall opinion regarding Price's ability to work. LTD 1096–97 (Bress indicating that Macedo's examination notes suggested normal gait, strength, physical appearance, and "neuropsych" exam). Unum also took issue with the conclusions of Parente, noting that Parente's opinion conflicted with observations made and results obtained during the exam, failed to address the possible significance of Price's diagnoses of anxiety and depression, and was undertaken a year after Price's proffered February 2015 date of disability. LTD 9985–86. The mere fact that Price can point to some evidence indicating that he is unable to work does not undermine Unum's overall assessment of his claim file. *See Neilson v. Unum Life Ins. Co. of Am.*, No. CCB-11-3317, 2013 U.S. Dist. LEXIS 35543, at \*17 (D. Md. Mar. 13, 2013).

Unum raised its concerns with Macedo and Parente directly and provided them with an opportunity to substantiate their opinions prior to Unum rendering a decision of its own. *See* LTD 1070–71 (Unum letter to Macedo dated September 18, 2015); LTD 9913–14 (Unum letter to Parente dated May 2, 2016). Receiving no response from the treating physicians, or any further clarification from Price or his attorney, Unum's decision to discount the conclusions of Macedo and Parente in light of the identified inconsistencies was not an abuse of discretion.

**D. Adequacy of Vocational Review**

Plan fiduciaries must use an "objectively reasonable" description of the insured's occupation in making a disability determination. *Gallagher v. Reliance Stand. Life Insur. Co.,* 305 F.3d 264, 271 (4th Cir. 2002). While Unum considered Price's ability to work based on the generic job responsibilities of a Program Specialist, and not the specific job requirements of Price's position with NDI, such an approach was reasonable. At the outset, Unum considered Price's job description and duties as characterized by both NDI and Price himself and determined that Price's job aligned with the material and substantial duties, and associated physical and cognitive demands, of a Program Specialist. The Program Specialist occupational description was taken from PAQ Services Inc.'s eDOT, and Unum's classification of Price under a generic job description is permitted under the Plan. *See* LTD 130 ("Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location").[19]

Price fails to acknowledge which, if any, of the material and substantial duties set forth in the Program Specialist job description do not apply to Price's job such that Unum's reliance on it was objectively unreasonable. Nor does Price explain how his actual job responsibilities, as characterized by NDI's job description, involve substantially more rigorous physical or cognitive demands than that of a Program Specialist. Rather, Price's main argument is that Unum failed to consider Price's international travel when classifying his job as a Program Specialist. ECF No. 25 at 42. However, Unum documented Price's purported travel demands when conducting its

---

[19] Price attempts to undercut Unum's reliance on the Program Specialist job description by arguing that it could not find that specific job description in the 1991 Dictionary of Occupational Titles ("DOT") found on Westlaw and that Peavy's review somehow violated the ethical requirements of vocational rehabilitation counselors, *see* ECF No. 25 at 42–43 (citing LTD 3055, 1241). However, because Unum set forth the description of a Program Specialist in Price's claim file, and Price is unable to offer any substantive arguments as to why the role inadequately captures Price's material and substantial duties with NDI, Prices arguments here are unpersuasive. *See also Wright v. Sullivan,* 900 F.2d 675, 684 (3rd Cir. 1990) (the fact that a specific job "is not found in the DOT proves that the DOT is not comprehensive, not that the job does not exist").

vocational review, and the Program Specialist position does in fact reflect occasional travel. LTD 768–70. But even if Price's actual travel demands were more rigorous than that required by a generic Program Specialist, Unum's vocational review need only capture material and substantial duties that are comparable, not necessarily identical, to that required by Price's actual job. *See Gallagher*, 305 F.3d at 272 (noting that plan's reliance on job description that omits travel requirements is "not a fatal flaw" because claimant is unable to establish that he cannot perform his non-travel duties). In comparing the duties of a Program Specialist to Price's actual job responsibilities as set forth in Unum's vocational review and reproduced herein, *see supra* I.C.2, the Court is unable find any significant differences between the two jobs. Both jobs require effective communication skills, preparation and delivery of training materials, travel, client interaction, and data analysis. Therefore, Unum's assessment of Price's ability to work as defined by the generic responsibilities and demands of a Program Specialist was not an abuse of discretion.

### E. Adherence to Plan Guidelines

A plan administrator has an obligation to follow procedures set forth in its claims processing documents, *Mullins v. Connecticut General Life Ins. Plan*, 880 F. Supp. 2d 713, 719 (E.D.Va. 2010), and Price argues that Unum failed to follow its own procedures when reviewing his claim. Price alleges that Unum failed to notify him of his right to request an independent medical examination as a result of the conflicting opinions between his treating physicians and Unum's reviewing physicians. ECF No. 25 at 44. Price also alleges that Unum's procedures prohibit it from paying disability benefits under a "reservation of rights" without undertaking an independent medical examination. *Id.* Neither allegation is supported by the Plan.

29

First, Unum's procedures provide that if Unum has "reason to question the information or opinion" of a claimant's attending physician, Unum must attempt to contact the physician. LTD 3064. "If an agreement cannot be reached after this contact, Unum has an obligation to obtain a second view of the medical information. This can be done in-house by a DMO or by an external examiner or records review, but we should always consider whether an independent exam is or is not necessary. A claimant can request an [Independent Medical Examination] at any time and we must notify the claimant of this right" *Id.* There is no dispute that Unum attempted to contact Price's physicians, specifically Macedo, Moss, and Parente, and the record shows that on May 21, 2015, Unum advised Price of his right to request an independent medical examination as a result. LTD 266.

Second, Unum's procedures do not prohibit it from paying benefits under a reservation of rights while further reviews are pending. According to the procedures, payment under a reservation of rights is not limited to when the results of an independent medical examination are pending; rather, it can be used while Unum waits for the conclusions of an "Independent Assessment," which can be *either* an independent medical examination or an independent paper/medical review. LTD 3067 ("When you agree to obtain an IA [Independent Assessment] in response to a claimant's request, the timing of the request generally determines whether benefits will be paid pending the results of the IA."). Therefore, Price's arguments that Unum failed to follow its internal procedures have no merit.[20]

---

[20] In response to Unum's reply brief, Price notes that "Unum's claim manual provision proffered concerning 'independent medical examinations' was not produced to this Court as part of the administrative record. This demonstrates both Unum's refusal to produce required documentation, follow its own procedures, and engage in post-hoc rationalization." ECF No. 28 at 2. However, Unum's reply brief cites to the same claims manual provisions within the administrative record that Plaintiff initially raised in its Cross Motion for Summary Judgment. ECF No. 25 at 44.

## F. Prior Unum Disability Determinations

Finally, Price devotes much of his Cross Motion for Summary Judgment to contending that Unum has a "sordid history" for unfair claim reviews. ECF No. 25 at 26–32. Price references testimony from former or current Unum employees or contractors to argue that Unum is unable to conduct objective claim reviews because it sets financial targets for claim closures, pressures employees to deny claims, and compensates employees based on Unum's corporate-wide performance.[21] *Id.* Price also notes that Unum was fined $15 million in 2004 as a result of a "Targeted Multistate Market Conduct" investigation and, as a result, its poor financial performance places further pressure on employees to deny claims. *Id.* at 29. However, Price fails to make any specific connections between these allegations and the actual process undertaken by Unum when reviewing Price's claim. [22]

Without more, Price essentially argues that Unum, as a whole, is incapable of rendering a fair decision—a generalized argument that he could assert in disputing any claim denial by Unum over the last ten years. Similar to Price's arguments attacking the credibility of Unum's medical reviewers, the Court weighs Unum's actual decision-making process as set forth in the administrative record in this case over general criticisms leveled against Unum or its affiliates. *See Kamerer v. Unum Life Insurance Company of America*, 251 F. Supp. 349, 352 (D. Mass 2017) ("This court will not assume Unum is biased every time it denies a claim simply because it employed unfair claims practices more than a decade ago, particularly in light of changes to claims processing it has since made.") (internal citations omitted). While the Court is mindful of Unum's structural conflict of interest, Price's insinuation that Unum's medical reviewers were

---

[21] Notably, none of these individuals were involved in evaluating Price's disability claim.

[22] Contrary to Price's assertions, Unum's willingness to award Price long term disability benefits while his claim was pending suggests that Unum was not inherently biased in reviewing Price's claim. *See Williams*, 609 F.3d at 632.

motivated by the desire to deny claims in order to boost profits is not supported by the record. *See Durakovic v. Building Serv. 32 BJ Pension Fund*, 609 F.3d 133, 138 (2d Cir. 2010) ("[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision"). Rather, the record shows that Unum has considered all of the medical evidence provided in Price's claim file and set forth a reasoned decision denying Price's claim, and the Court is not persuaded by generic arguments suggesting that Unum has a vested interest in denying disability claims as a matter of course. As such, Unum's denial of Price's long term disability claim was not an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 23, shall be granted, and Plaintiff's Cross Motion for Summary Judgment, ECF No. 25, shall be denied.

Dated: March 19 , 2018

GEORGE J. HAZEL
United States District Judge